BELL *v.* DEBS.

ESTOPPEL—DELAY IN REPUDIATING FRAUD—CANCELLATION OF IN-STRUMENTS.

> In a suit for the cancellation of a land contract, assigned by plaintiff for the purpose of making a loan in his interest, but used fraudulently by the assignee, where plaintiff failed to act promptly in repudiating the transaction after learning thereof, which might have resulted in minimizing the loss, the one advancing the money to plaintiff's assignee is entitled to a lien on the contract for any deficiency not recovered from him up to the amount actually advanced.[1]

Appeal from Wayne; Merriam (De Witt H.), J. Submitted June 10, 1925. (Docket No. 75.) Decided July 16, 1925.

Bill by Harry A. Bell against Schickery G. Debs, Joseph Daood and another for the cancellation of an assignment of a land contract. From a decree for plaintiff, defendant Daood appeals. Modified and affirmed.

*Edward L. Bryant* (*Francis W. Allen* and *Julius J. Lechner*, of counsel), for plaintiff.

*Frank Walters* (*Monaghan, Crowley, Reilley & Kellogg*, of counsel), for appellant.

MOORE, J. Prior to November 30, 1921, the plaintiff was the owner, by assignment, of a land contract calling for the purchase of a four-family apartment house located at 1505 Gray avenue in the city of Detroit, for which he paid the sum of $14,000. There was a balance of approximately $4,000 due to the

[1]Estoppel, 21 C. J. § 170.

owners of record, to be paid at the rate of $70 a month including interest.    The deal by which Mr. Bell became the owner of the contract was closed in the office of John P. Hehl, one of the defendants.    At the closing of said deal Mr. Bell was approached by William Haffner and W. A. Snell, real estate agents, in Mr. Hehl's office and also by the defendant Schickery G. Debs, who informed him that they had a deal whereby he could exchange the said apartment house and make a very substantial profit.    The plaintiff consented to a deal involving what is known as the Billiken theatre equipment and lease on Holden avenue in the city of Detroit, together with other properties.

It is the claim of the plaintiff that Mr. Debs stated he needed a few hundred dollars to clear the title to the theatre property, and that Mr. Bell was induced to assign his land contract to Mr. Debs to enable Mr. Debs to use it to raise not to exceed $1,500, the land contract to be left as an escrow with Mr. Hehl, and any loan negotiated to be completed in the office of Mr. Hehl and the money to be used to enable Mr. Debs to complete the agreement between Mr. Bell and Mr. Debs.    It is the further claim that the contract with its assignment was stolen from the office of Mr. Hehl, and assigned to Mr. Daood, he loaning Mr. Debs $2,000, and taking the note of Mr. Debs for $2,500, and that Mr. Debs, Mr. Daood and a Mr. Haffner were all engaged in a scheme to defraud Mr. Bell.

The bill of complaint in this case was filed to obtain a cancelment of the assignment of the contract, and its return to Mr. Bell, and for other relief.    Mr. Daood insisted he acted with prudence and in good faith. The circuit judge was of the opinion that Mr. Bell had been defrauded; enjoined the defendants from incumbering the property, canceled the assignment, decreed a return of the contract to Mr. Bell, and—

"that said defendant Joseph Daood be decreed the sum

of two thousand five hundred dollars to be paid to him by the said defendant Schickery Debs, and further that the said defendant Joseph Daood may have a lien on the one thousand dollars and note now held by said John P. Hehl, which note and money now held by defendant Hehl are to be paid immediately and given over to Daood, * * * defendant Daood is not to have a lien on the premises described as No. 1505 Gray avenue, but plaintiff, Harry A. Bell, shall be released from any liability for the said amount of two thousand five hundred dollars, or any part thereof. * * *

"Further, that said plaintiff, Harry A. Bell, shall pay to the defendant Joseph Daood the sum of eleven hundred ten and 98/100 dollars within ninety days from the filing of this decree, without interest, and that the said defendant John P. Hehl pay direct and deliver to the said plaintiff, Harry A. Bell, all contracts and papers received or now held by him belonging to this plaintiff."

We quote from the brief of the appellant:

"The issue material to the interest of this appellant is dependent upon three questions:

*"First:* Was this appellant guilty of or a party to any fraud?

*"Second:* Did this appellant have any notice, actual or constructive, of the conditions under which Mr. Bell assigned the land contract to Mr. Debs?

*"Third:* Did Mr. Bell by his acceptance of $1,000 in cash and the note for $1,300 from Mr. Debs waive his right to institute the present action based upon fraud?"

In our view of the case it will not be necessary to discuss the first two of these questions. This is because of what plaintiff did not do when he discovered the contract had been removed from the office of Mr. Hehl, and what he did do afterwards.

We quote from the testimony of Mr. Bell:

"I went to Mr. Stockwell several times and asked him if the contract was being taken out of the office and if he was protecting me and Mr. Hehl on that,

and he assured me that I was being protected and he told me that the contract was being taken out by Mr. Debs for the purpose of raising this money, and was taken out and signed for by the ones who took it out, and later on I had a conference with Mr. Debs and Mr. Stockwell and discovered that the $2,500 had been raised on this contract. This conference was in Mr. Hehl's office and I then put up the matter to Mr. Debs if satisfactory arrangements were not made that I was going to apply for a warrant for his arrest. Satisfactory arrangements were made and reduced to writing; they were in the form of a receipt signed by Mr. Hehl to Mr. Debs and approved by me. * * *

"*A.* That is a copy of it.

"*Q.* It states in that receipt:

" 'Detroit, Michigan, January 20th, 1922. Received of Schickery Debs, one thousand dollars in cash and promissory note bearing even date herewith, in the sum of thirteen hundred dollars, wherein the maker is Schickery Debs and the payee Harry A. Bell, with the understanding and specific agreement that all of said sums and said note shall be held by the said John P. Hehl Company, as agent, until the provisions of various agreements existing between one Harry A. Bell and Schickery Debs shall have been performed, with the further provision, however, that in the event it shall be necessary that Schickery Debs to utilize the moneys aforesaid or any part thereof, for the purpose of carrying out the agreements entered into between the said Debs and the said Bell, the said John P. Hehl Company shall advance such amount out of the funds herewith deposited with said company. O. K. Harry A. Bell.'

"You agreed to that?

"*A.* Yes, sir. * * *

"I bought this property some time in the early part of November, or the latter part of October, the month before the contract is the best evidence of that, of the day, that is approximately the time. I took the interest entirely of Mr. Whipple, subject to a balance unpaid to Mr. Jacobi, amounting to $5,250, payable $70 per month, including interest, and taxes to be paid by the holder of the contract. * * * With reference to carrying out the terms of the contract, first I made some of the payments; then I was advised by my attorney who was acting for me at that time to force the issue with this man Daood and make

him pay the payments himself; to first have an understanding with Cartright and Williams to that effect. Cartright & Williams, by the way, have a pretty definite understanding of how I've been, as they call it 'gyped' in this matter, and he told my attorney, Mr. Hilton, who was at that time acting for me. He said he thought it would be a good move for me to force these fellows to make payments and if they failed to make the payments, to have an understanding with Mr. Cartright they should be closed out; that would save a lawsuit, if I should stand the costs of it and I could come in and save my equity at that time. This I did. I called Mr. Daood and told him personally that I would not pay a cent on the payments on that piece of property; that he would have to pay the payments or lose out. He said, 'Never mind, I will pay the payments,' and he said, 'You will not have a dollar of equity in that any further;' we forced him to make the payments and he did so up until the time the receiver was appointed. * * *

"*Q.* Did you keep up the insurance on the property?

"*A.* No, sir, did not keep up any expenses at all; I did not have the contract in my possession. I did not pay the taxes and did not pay anything. I forced Mr. Daood and Mr. Debs to do that themselves, as they were holding the contract until they were foreclosed out or someone gotten out of it. Foreclosure proceedings were started twice by Cartright and Williams, who are the agents for the vendor, Mr. Jacobi and wife. I received notices of these foreclosure proceedings and attended both trials.. I know just exactly what transpired at each case. I was not directly present at the office but I know just what was going on from time to time.

"*Q.* And there was a judgment rendered in favor of the plaintiff in the case?

"*A.* I know that Mr. Daood paid both times the payments.

"*Q.* Do you know the amount that was paid?

"*A.* Four hundred and some odd dollars each time; it totaled as we have figured up, total amount of about $1,100, interest and taxes, papers. everything that has been paid."

It will be noticed by this testimony that, when Mr.

Bell learned of the fraud which had been practiced upon him, he did not "call off" the deal, but that he made a new arrangement by which he still hoped to get the theatre, and the $1,000 which was part of what Mr. Debs got from Mr. Daood was to be used to clear off the indebtedness and thus enable Mr. Debs to carry out the original trade.    It was not until it became evident that Mr. Debs could not or would not close the deal, that Mr. Bell began this suit.

We are satisfied that Mr. Bell did not so conduct himself toward the transaction that Mr. Daood could take such action as would make his loss as light as possible.    If Mr. Bell had acted promptly Mr. Daood could have at once recovered a very substantial part of the money obtained from him by Mr. Debs, as is apparent by the fact that $1,000 of it was brought to the office of Mr. Hehl.    The testimony discloses that Mr. Daood furnished but $2,000 in money, and that should be the limit of the decree as affecting Mr. Bell.

We think the decree should be modified so as to give Mr. Daood a lien, first, on the $1,000 in money, and the note for $1,300 left with Mr. Hehl by Mr. Debs. After this lien is exhausted if it does not result in Mr. Daood realizing $2,000, then Mr. Daood shall have a lien on the contract for the deficiency up to $2,000.

The decree of the court below will be modified as indicated, with costs to the appellant.

McDonald, C. J., and Clark, Bird, Sharpe, Steere, Fellows, and Wiest, JJ., concurred.